IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| TRICIA GIZIENSKI, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:13-cv-00552 |
| | ) | |
| v. | ) | Judge Mark R. Hornak |
| | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

### I. INTRODUCTION

Plaintiff Tricia Gizienski ("Mrs. Gizienski") brought this action pursuant to 42 U.S.C. § 405(g), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner"), which denied her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403.

### II. BACKGROUND

#### A. Facts

Mrs. Gizienski was born on February 5, 1972. ECF No. 5-2 at 21. She holds a Bachelor's degree in environmental science and a Juris Doctorate degree, and has been admitted to the Pennsylvania Bar. *Id.* at 27. She last worked as a business/office manager for Absolute Primary Care, a company owned by her husband. *Id.* at 40-41. Prior to that, she was an attorney for the Pennsylvania Department of Environmental Protection and owned her own small business. *Id.* at 28-31.

Mrs. Gizienski alleges disability as of February 27, 2007, due to various impairments, primarily chronic fatigue syndrome, fibromyalgia, and irritable bowel syndrome ("IBS"). *Id.* at 31, 34-35. The record reflects that she has not engaged in substantial gainful work activity since alleging disability in June 2010.[1]

## B. Procedural History

Mrs. Gizienski initially filed an application for DIB on June 21, 2010, in which she claimed total disability since February 27, 2007. *Id.* at 11. An administrative hearing was held on October 20, 2011 before Administrative Law Judge William Bezego ("ALJ"). *Id.* Mrs. Gizienski was represented by counsel and testified at the hearing. *Id.* Patricia Murphy, an impartial vocational expert ("VE"), also testified at the hearing. *Id.*

On January 24, 2012, the ALJ rendered a decision unfavorable to Mrs. Gizienski in which he found that she retained the ability to perform sedentary work, limited to occupations involving routine, repetitive tasks and entailing no more than frequent fine and gross manipulative tasks, that would allow her an at-will sit-stand option and would require only occasional interaction with the public, co-workers, and supervisors. *Id.* at 16. On that basis, the ALJ found she was not "disabled" within the meaning of the Act. *Id.* at 22.

The ALJ's decision became the final decision of the Commissioner on March 13, 2013, when the Appeals Council denied Mrs. Gizienski's request to review the decision of the ALJ. *Id.* at 2-4.

On April 17, 2013, Mrs. Gizienski filed her Complaint in this Court, seeking judicial review of the decision of the ALJ. ECF No. 1. The parties have filed cross-motions for summary judgment, ECF Nos. 9 and 11, and respective briefs in support, ECF Nos. 10 and 12.

---

[1] The record does show that Mrs. Gizienski made $70,000 in 2008 and $15,000 in 2009, but she argued that those sums were not earned through work she performed in 2008 and 2009. ECF No. 5-2 at 14. Rather, Mrs. Gizienski claimed she was being paid reimbursement for her employment in previous years with Absolute Primary Care. *Id.*

2

Mrs. Gizienski has filed a response to the Commissioner's brief. ECF No. 13. She contends that the ALJ erred in two respects – in failing to account for certain postural limitations in his hypothetical questions to the VE and in his formulation of her RFC, and by giving little weight to the opinions of both of her treating physicians. The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence. The Court concludes that the ALJ erred in failing to explain his omission of postural limitations in Mrs. Gizienski's RFC or his hypothetical questions to the VE, and therefore his decision is not supported by substantial evidence. The Court will therefore remand this case to the ALJ for further development of the record in accordance with this Opinion.

## III. LEGAL ANALYSIS

### A. Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. § 405(g). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800 (3d Cir. 2010).

In situations where a claimant files concurrent applications for SSI and DIB, courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d. Cir. 2002) ("This test [whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability

3

benefits [DIB]. Compare 20 C.F.R. § 416.920 with § 404.1520."); *Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990) (holding that regulations implementing the Title II [DIB] standard, and those implementing the Title XVI [SSI] standard are the same in all relevant aspects.); *Morales v. Apfel*, 225 F.3d 310, 315-16 (3d. Cir. 2000) (stating claimant's burden of proving disability is the same for both DIB and SSI).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a Listed Impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (*quoting Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Subpt. P, App. 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

(2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work

4

which exists in the national economy . . . ." *Campbell,* 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes her from returning to her former job. *Newell,* 347 F.3d at 545-46; *Jones,* 364 F.3d at 503. Once it is shown that the claimant is unable to resume her previous employment, the burden shifts to the Commissioner to prove that, given the claimant's mental or physical limitations, age, education and work experience, she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford,* 399 F.3d at 551; *Newell,* 347 F.3d at 546; *Jones,* 364 F.3d at 503; *Burns v. Barnhart,* 312 F.3d 113, 119 (3d Cir. 2002).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.,* 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

In this case, the ALJ determined that Mrs. Gizienski was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process. ECF No. 5-2 at 22-23. The ALJ concluded that while she did have a number of severe impairments – fibromyalgia, IBS, chronic fatigue syndrome, polycystic ovarian syndrome, headaches, depression, and anxiety – she did not have an impairment or combination of impairments that "met or medically equaled" a Listed Impairment during the relevant period. *Id.* at 14. In his findings, the ALJ explicitly considered

the criteria of listings 14.09 (inflammatory arthritis), 5.06 (inflammatory bowel disease), 6.00 (genitourinary system), 11.00 (neurological), 12.04 (affective disorders), and 12.06 (anxiety-related disorders). *Id.* at 14-16.

The ALJ then found that Mrs. Gizienski retained the RFC to perform sedentary work as defined at 20 C.F.R. § 404.1567(a), with a number of specific limitations:

1) She was limited to occupations that would permit her the option to alternate between sitting and standing at will;

2) She could not be required to perform more than frequent fine and gross manipulative tasks;

3) She was limited to routine, repetitive tasks; and

4) She could have only occasional interaction with the public, co-workers, and supervisors.

*Id.* at 16. From the testimony of the VE, the ALJ next concluded that Mrs. Gizienski could not perform any of her past work. *Id.* at 21. However, based on further VE testimony that jobs existed in significant numbers in the national economy that an individual with Mrs. Gizienski's age, education, work experience, and RFC could perform – including document preparer, touch-up screener, and addresser – the ALJ found that she was capable of making a successful adjustment to other work during the relevant period and therefore was not disabled within the meaning of the Act. *Id.* at 22-23.

**B.     Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are

supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

### 1. **Postural Limitations**

In support of his decision, the ALJ afforded "great weight" to the opinion of Dr. Michael Cozza ("Dr. Cozza"), a consultative examiner who saw Mrs. Gizienski for a physical examination on November 16, 2011, as ordered by the ALJ. ECF No. 5-2 at 19. The ALJ explicitly credited in his opinion the portions of Dr. Cozza's report finding that Mrs. Gizienski could perform exertional activities at a less than full range of sedentary activity, with the ability to alternate between sitting and standing at her option. *Id.* He incorporated those findings into Mrs. Gizienski's RFC. *Id.* at 16. Dr. Cozza also noted in his report that Mrs. Gizienski could only occasionally perform postural activities such as climbing, kneeling, crouching, stooping, balancing, and crawling (anywhere from very little up to one-third of an eight hour day). ECF No. 5-33 at 12. However, the ALJ did not include any postural limitations in Mrs. Gizienski's RFC or in the hypothetical questions he posed to the VE at the hearing. *See* ECF No. 5-2 at 16, 42-44. Mrs. Gizienski contends that the ALJ's failure to do so constituted error, because he gave great weight to Dr. Cozza's opinion and then failed to consider an important part of that opinion without any explanation.

While "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight," *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x. 254, 256 (3d Cir. Mar. 5, 2014), the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). "An examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of

7

subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision." *Id.* Additionally, a hypothetical question to a VE must accurately portray the claimant's physical and mental impairments, as supported by the record. *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).

The ALJ provided no explanation as to why he did not include as part of the RFC or VE hypotheticals the postural limitations found by Dr. Cozza. Further, he did not address conflicting findings on postural limitations made by other doctors. In her medical source statement, Dr. Lauren Loya ("Dr. Loya"), one of Mrs. Gizienski's treating physicians, opined that Mrs. Gizienski was limited to occasionally performing postural activities, with the single distinction from Dr. Cozza's report that Mrs. Gizienski could never engage in climbing. ECF No. 5-33 at 4. The ALJ gave Dr. Loya's report little weight overall in his opinion. ECF No. 5-2 at 20. Dr. Gregory Mortimer ("Dr. Mortimer"), a state agency physician, stated in his report that Mrs. Gizienski's medical records established no postural limitations. ECF No. 5-30 at 32. The ALJ gave Dr. Mortimer's report great weight, ECF No. 5-2 at 19, but did not explain at all how he reconciled the complete divergence in findings on postural limitations between the two doctors whose reports he gave such substantial weight.

The Commissioner argues that the inclusion of postural limitations would not make a difference to the outcome of the case and was therefore harmless error on the ALJ's part. In support, the Commissioner cites to the occupational definitions of the three positions identified by the VE at the hearing, as contained in the Dictionary of Occupational Titles ("DOT"). Each of those definitions specifies that there are no postural activities – climbing, balancing, stooping, kneeling, crouching, and crawling – involved in those jobs. *See* DICOT 249.587-018, 1991 WL 672349 (document preparer); DICOT 726.684-110, 1991 WL 679616 (touch-up screener); DICOT 209.587-010, 1991 WL 671797 (addresser).

8

While that may be true, the case law is clear in requiring the ALJ, where there is conflicting evidence in the record as to a plaintiff's postural limitations, to explain which evidence he accepts and rejects and the reasons for his determination. *See Gority v. Astrue*, 2011 WL 1225708, at *6 (W.D. Pa. Mar. 29, 2011) (internal citations omitted). And although "[p]ostural limitations...would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work," SSR 96-9p at *7, the ALJ in this case did not find that Mrs. Gizienski could perform the full range of unskilled sedentary work. Instead, he found that she could perform sedentary work with several specific limitations, creating an occupational base which another limitation based on a restricted ability to perform postural activities could have further eroded.

Because there is conflicting evidence in the record as to Mrs. Gizienski's postural limitations, and the ALJ did not address that with the VE or give any indication in his opinion as to why he included no postural limitations in her RFC, the Court will remand this case to the Commissioner. In doing so, the Court expresses no opinion as to whether the ALJ's RFC determination and hypotheticals in regard to Mrs. Gizienski's postural limitations could be supported by the record. The need for further explanation, and potentially additional VE testimony, mandates remand on this issue.

### 2. Treating Physician Opinions

Mrs. Gizienski also asks the Court to remand her case based on the fact that the ALJ gave little weight to the opinions of her treating physicians, Dr. Loya and Dr. Hassan Hassouri ("Dr. Hassouri"), in favor of the reports of the consultative examiners and state agency physicians. A "cardinal principle" of disability determinations is that the ALJ must ordinarily give the medical opinion of a treating physician substantial weight. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Under the "treating physician doctrine," "a court considering a disability benefits claim

must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant once or not at all." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). The ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Fargnoli*, 247 F.3d at 43 (quoting 20 C.F.R. § 404.1527(d)(2)). An ALJ may only reject a treating physician's assessment on the basis of contradictory medical evidence, not on speculation, credibility judgments, or lay opinion. *Id.* at 43-44.

However, "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012) (internal citation omitted). A showing of contradictory evidence and an accompanying explanation will allow an ALJ to give a treating physician's opinion less weight or even reject it outright. *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008). The determination of disability is reserved for the Commissioner and should not be affected by a medical source simply because it states that a plaintiff is disabled or unable to work. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

In his medical source statement, Dr. Hassouri, Mrs. Gizienski's treating neurologist, reported that she had headaches lasting for several days, and opined that she would not be able to work while having a headache due to decreased concentration. ECF No. 5-32 at 37. He also stated that she became incapacitated due to severe headaches, causing her to be unable to tolerate any physical activity. *Id.* The ALJ provided several reasons why Dr. Hassouri's conclusions were not supported by the other medical evidence of record:

- Dr. Hassouri's own records showed that Mrs. Gizienski's headaches were not severe enough to require regular use of the medications he prescribed to her;

10

- Dr. Hassouri acknowledged that Mrs. Gizienski did not see him routinely and did not need or request a refill of those medications in the several years he treated her;

- Mrs. Gizienski told Dr. Hassouri that when she had headaches, she was able to "tough it out"; and

- There were no records of emergency medical treatment for Mrs. Gizienski's headaches or any other related symptoms.

ECF No. 5-2 at 20; ECF No. 5-31 at 25-29. Because the ALJ demonstrated that evidence in the record contradicted Dr. Hassouri's opinion and explained why it was not entitled to great weight, the Court concludes that the ALJ's decision to accord little weight to that opinion was supported by substantial evidence.

As for Dr. Loya, according to the ALJ, she provided homeopathic[2] and other alternative treatments to Mrs. Gizienski. ECF No. 5-2 at 20. In her medical source statement, Dr. Loya indicated that Mrs. Gizienski had no work capacity, could not lift any weight or walk for two hours, had to alternate between sitting and standing every 30 minutes due to pain and stiffness, required occasional elevation of her legs to prevent edema, had marked limitations in everyday activities, and had delays in cognitive functioning. ECF No. 5-33 at 2-6. The ALJ afforded her findings little weight because "the medical records fail to demonstrate an objective medical finding consistent with the claimant's subjective allegations of pain and fatigue," and Dr. Loya's opinion, which he found to be largely based on those subjective allegations, departed substantially from the rest of the evidence of record. ECF No. 5-2 at 20.

An examination of the rest of the record cited in the ALJ's opinion demonstrates that it markedly contradicts Dr. Loya's opinion. Dr. Cozza observed that Mrs. Gizienski had a normal gait, active range of motion, normal muscle strength, and a negative straight leg test. ECF No. 5-

---

[2] Homeopathy is a system of alternative medicine that "lacks plausibility" and whose postulated remedies "are both scientifically implausible and not physically possible." HOMEOPATHY, http://en.wikipedia.org/wiki/Homeopathy (last visited July 22, 2014).

11

33 at 8-14. Based on his examination, Dr. Cozza found that she could perform exertional activities at a less than full range of sedentary work with the ability to alternate between sitting and standing at her option. *Id.* Dr. Mortimer found that she could perform work-related exertional activities consistent with sedentary work. ECF No. 5-30 at 30-34. Neither the consultative psychologist who examined Mrs. Gizienski nor the state agency psychologist who reviewed her records found her to suffer from any medically determinable mental health impairment. ECF No. 5-2 at 21. Additionally, the ALJ noted that much of Dr. Loya's opinion was based on Mrs. Gizienski's subjective complaints of pain. *Id.* at 20. He found, in great detail, that her alleged symptoms could be caused by her medical impairments, but the record did not support the intensity, persistence, and limiting effects of those symptoms to the extent she claimed. *Id.* at 17-19. The ALJ also cited a number of inconsistencies in Mrs. Gizienski's assertions about her capabilities, including:

- "She testified that she spends most days in bed, yet she also testified that she drives a motor vehicle six days a week";

- "[She] testified that she is unable to do various household chores…[h]owever, she reported having three young children in the home for whom she provides care, particularly in the mornings. She also assists with laundry, drives, and shops weekly."

- "Despite the allegations of symptoms and limitations preventing all work, the record reflects that the claimant went on at least one trip with her family to Florida since the alleged onset date. In fact, she reported spending the entire month of August 2011 in Florida."

*Id.* at 19. On those grounds, the Court concludes that the ALJ identified substantial contradictory evidence to justify according little weight to Dr. Loya's findings. While remand is warranted on another basis, it is not being granted due to any unwarranted failure by the ALJ to abide by the treating physicians' opinions.

## IV. CONCLUSION

For the reasons stated in this Opinion, the Court will remand this case as required for an explanation of the ALJ's omission of postural limitations in Mrs. Gizienski's RFC. If the omission was not supported by substantial evidence within the medical record, a new hypothetical question must be submitted to the VE. On remand, the ALJ shall fully develop the record and explain his findings "to ensure that the parties have an opportunity to be heard on the remanded issues and prevent *post hoc* rationalization" by the ALJ. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800-01 (3d Cir. 2010) (emphasis in original). The Court will therefore grant the Motion for Summary Judgment filed by Mrs. Gizienski and deny the Motion for Summary Judgment filed by the Commissioner, to the extent of vacating the decision of the Commissioner and remanding this case for further proceedings consistent with this Opinion.

An appropriate Order follows.

Mark R. Hornak
United States District Judge

Dated: July __, 2014

cc: All Counsel of Record